UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERT C. ZYLSTRA and<br>THOMAS C. ZYLSTRA,<br><br>                Plaintiffs,<br><br>vs.<br><br>MICHAEL P. MATTER,<br><br>                Defendant. | Civil No. _____<br><br>**COMPLAINT** |

Plaintiffs Robert C. Zylstra and Thomas C. Zylstra, for their Complaint against defendant Michael P. Matter, allege as follows:

## INTRODUCTION

1. Defendant Michael Matter has borrowed more than $1.3 million dollars from his business partners, Robert and Thomas Zylstra (the "Zylstras"). Matter has not kept his agreement to pay the money back.

2. Matter used this borrowed money to buy a controlling interest in the Zylstras' business, and Matter promised to pay this money back through a series of six Promissory Notes (the "Notes").

3. Matter has failed to make timely payments, and he has not paid everything that he owes under the Notes. The Zylstras bring this action to make Matter live up to his obligations under the Notes.

## PARTIES

4.	Plaintiffs Robert Zylstra and Thomas Zylstra are citizens of the State of Iowa, residing in Ames, IA. They are father and son, respectively.

5.	On information and belief, defendant Michael Matter is a citizen of the State of Minnesota, residing in Elk River, MN.

## JURISDICTION AND VENUE

6.	This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

7.	Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district. The parties to the Notes have also consented to the jurisdiction of this Court for any disputes under the Notes.

## FACTS

**Michael Matter Borrowed More Than $1.3 Million From the Zylstras**

8.	Robert and Thomas Zylstra are father and son, as well as business partners. In 2010, the Zylstras agreed to sell Matter a controlling interest in their Harley-Davidson Motorcycle dealership (the "Dealership").

9.	Matter did not have enough money to buy the shares outright, so the Zylstras agreed to lend Matter all the money to buy the controlling interest in the Dealership. The parties agreed that Matter would purchase portions of stock over a period of five years, and that Matter would pay for each portion of stock with a

-2-

Promissory Note payable to the Zylstras. The stock purchase itself is governed by a Stock Purchase Agreement, which is not at issue in this lawsuit.

**Matter Signed Six Promissory Notes, Agreeing To Pay the Money Back**

10. In total, Matter borrowed $1,380,000.00 from the Zylstras. The amount was divided up into six portions.

11. On or about April 30, 2010, Matter borrowed $450,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-1 ("Note B-1").

12. On or about January 4, 2011, Matter borrowed $180,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-2 ("Note B-2").

13. On or about January 4, 2012, Matter borrowed an additional $180,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-3 ("Note B-3").

14. On or about January 4, 2013, Matter borrowed an additional $180,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-4 ("Note B-4").

15. On or about January 4, 2014, Matter borrowed an additional $180,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-5 ("Note B-5").

16.     On or about January 4, 2015, Matter borrowed $210,000 from the Zylstras to buy shares in the Dealership, and promised to pay that amount back according to the terms of Promissory Note B-6 ("Note B-6").

17.     The Notes have, except for payment dates and dollar amounts, identical terms.

18.     Each Note provides that Matter would repay the principal sum for the Note with interest, at an annual interest rate of 7.0 percent.  Matter agreed to make payments in installments such that repayment of each Note is amortized over a twenty-year period from the date of the Note.  Each Note has a Maturity Date that is 10 years from the date of the Note.  On the Maturity Date for each Note, the remaining amount of principal, interest, and any other amounts owing will be due as a balloon payment.

19.     Each Note provides for six annual payments of principal and interest.  After the first six annual payments, Matter is to make monthly payments of principal and interest monthly, in amounts necessary to allow for payment of the principal and all accrued interest over the remainder of the amortization period.

20.     Section 6 of each Note provides that if any sum payable under the Note is not paid on the date on which it is due, Matter will pay to the Zylstras upon demand an amount equal to 5 percent per annum in excess of the 7 percent interest rate owing as of that date.  Thus, for all past due amounts under the Note, Matter must pay interest of 12 percent.

21.     Section 7 of each Note provides that if it becomes necessary for the Zylstras to employ counsel to enforce the amounts owing under the Note, Matter shall

pay the Zylstras all costs of collection that they incurred, including the attorneys' fees and costs that were reasonably incurred for the services of counsel, whether or not suit was brought.

22. Section 10 of each Note provides that no extension of time for payment of the Note, or any installment under the Note, shall release or waive Matter's liability for his obligations under the Note.

23. Section 13 of each Note provides that all actions or proceedings related to the Note will be litigated in Minnesota State Court in Sherburne County or in this Court. Section 13 also contains a consent to the jurisdiction in such actions by any court located within Sherburne County, Minnesota or Minneapolis, Minnesota. Section 15 of each Note provides that the Note shall be governed by the laws of the State of Minnesota.

**Matter Has Not Paid Back What He Owes**

24. Matter has been violating his obligations under the Notes from the very start.

25. The first payment on any of the Notes was due on April 30, 2011. On that day, Matter was supposed to make the first annual payment to the Zylstras under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

26. The second payment on any of the Notes was due on January 1, 2012. On that day, Matter was supposed to make his first annual payment under Note B-2, in the amount of $16,746.48. Matter did not make this payment.

27. The third payment on any of the Notes was due on April 30, 2012. On that day, Matter was supposed to make the second annual payment under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

28. By April 30, 2012, three payments under the Notes had come due, and Matter had not paid any of them.

29. Matter did not make a payment under any notes until August 4, 2012, when he made a payment of $100,469.00. This amount still did not cover the principal and interest that was due at that time.

30. Matter's next payments were due on January 1, 2013, as follows:

   a. Matter was supposed to make the second annual payment under Note B-2, in the amount of $16,746.48. He did not make this payment.

   b. Matter was supposed to make the first annual payment under Note B-3, also in the amount of $16,746.48. He did not make this payment.

31. Matter's next payment was due on April 30, 2013. On that day, Matter was supposed to make the third annual payment under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

32. Matter made another late, partial payment on August 1, 2013, in the amount of $167,495. This amount did not cover the principal and interest that was due at that time.

33. Matter next had three payments due on January 1, 2014, as follows:

   a. Matter was supposed to make the third annual payment under Note B-2, in the amount of $16,746.48. He did not make this payment.

      b. Matter was supposed to make the second annual payment under Note B-3, in the amount of $16,746.48. He did not make this payment.

      c. Matter was supposed to make the first annual payment under Note B-4, in the amount of $16,746.48. He did not make this payment.

34. Matter's next payment was due on April 30, 2014. On that day, Matter was supposed to make the fourth annual payment under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

35. Matter made a late, partial payment on October 27, 2014, in the amount of $89,656.00. This amount did not cover the principal and interest that was due at that time.

36. Matter next had four more payments due on January 1, 2015, as follows:

      a. Matter was supposed to make the fourth annual payment under Note B-2, in the amount of $16,746.48. He did not make this payment.

      b. Matter was supposed to make the third annual payment under Note B-3, in the amount of $16,746.48. He did not make this payment.

      c. Matter was supposed to make the second annual payment under Note B-4, also in the amount of $16,746.48. He did not make this payment.

      d. Matter was supposed to make the first annual payment under Note B-5, in the amount of $16,746.48. He did not make this payment.

37. Matter made a late, partial payment on April 4, 2015, in the amount of $36,513.00. This amount did not cover the principal and interest that was due at that time.

38. Matter's next payment was due on April 30, 2015. On that day, Matter was supposed to make the fifth annual payment under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

39. Matter next had five more payments due on January 1, 2016, as follows:

   a. Matter was supposed to make the fifth annual payment under Note B-2, in the amount of $16,746.48. He did not make this payment.

   b. Matter was supposed to make the fourth annual payment under Note B-3, in the amount of $16,746.48. He did not make this payment.

   c. Matter was supposed to make the third annual payment under Note B-4, also in the amount of $16,746.48. He did not make this payment.

   d. Matter was supposed to make the second annual payment under Note B-5, in the amount of $16,746.48. He did not make this payment.

   e. Matter was supposed to make the first annual payment under Note B-6, in the amount of $19,537.56. He did not make this payment.

40. Matter made a late, partial payment on April 21, 2016, in the amount of $10,928.00. This amount did not cover the principal and interest that was due at that time.

41. Matter's next payment was due on April 30, 2016. On that day, Matter was supposed to make the sixth and final annual payment under Note B-1, in the amount of $41,866.20. Matter did not make this payment.

42. Starting on or about June 1, 2016, Matter was supposed to begin making monthly payments under Note B-1. Matter has not made any of these payments.

43. As of June 30, 2016, Matter owes approximately $400,679.00 in back payments to bring him current on his obligations under the Notes. Interest continues to accrue on this amount.

## COUNT ONE
### (Breach of Contract)

44. EMC restates and re-alleges all previous paragraphs.

45. Matter executed the Promissory Notes, in which he agreed to make certain payments to the Zylstras, with interest, on certain dates.

46. Matter has failed to pay sums due under the Notes on the dates on which they are due, and has failed to pay what he owes to date under the Notes. Accordingly, Matter has breached each of the Notes.

47. As a direct result of Matter's breaches, the Zylstras have been damaged in an amount that is at least $400,679.00, and which will be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs Robert Zylstra and Thomas Zylstra demand judgment against defendant Michael Matter, and respectfully ask the Court to:

1. Enter judgment against Michael Matter, and in favor of Robert C. Zylstra and Thomas C. Zylstra, for all damages proximately caused by Matter's wrongful actions, including all amounts currently due and owing under the Notes.

2. Award plaintiffs all pre-judgment and post-judgment interest, as allowed by law.

3. Enter judgment against Michael Matter requiring him to pay the plaintiffs' reasonable attorneys' fees, costs, and other expenses in bringing this action, as provided under the Notes.

4. Order all other relief that the Court deems proper and just.

Dated: July 18, 2016                FAEGRE BAKER DANIELS LLP

s/ Martin S. Chester
Martin S. Chester (#031514X)
*Martin.chester@faegrebd.com*
Aaron P. Knoll (#0393066)
*Aaron.knoll@faegrebd.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612)766-7000

*Attorneys for Plaintiffs*
*Robert C. Zylstra and Thomas C. Zylstra*

US.107023195.02