## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Robert C. Zylstra, *et al.*,

                              Plaintiffs,          Civ. No. 16-2438 (RHK/SER)
v.                                                 **ORDER**

Michael P. Matter,

                              Defendant.

---

Martin S. Chester, Aaron P. Knoll, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Plaintiffs.

Craig P. Miller, Amanda M. Sicoli, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota, for Defendant.

---

In this action, Plaintiffs Robert and Thomas Zylstra allege that Defendant Michael Matter failed to pay sums due under several promissory notes executed by Matter in connection with his purchase of the Zylstras' Harley-Davidson Motorcycle dealership (the "Dealership") in Elk River, Minnesota. Presently before the Court is Matter's Motion to dismiss or stay this action in favor of arbitration. For the reasons that follow, the Motion will be granted.

The pertinent facts are undisputed. In 1994, the Zylstras (who are father and son) became Harley-Davidson franchisees; they eventually opened dealerships in Iowa, Illinois, and Minnesota, including the Dealership in question here. The Zylstras hired Matter in 2000 as the Dealership's service manager, later promoting him to general manager. (See Zylstra Decl. ¶¶ 4-6; Matter Decl. ¶ 3.)

In 2010, the Zylstras agreed to sell a majority interest in the Dealership to Matter. (Zylstra Decl. ¶ 7; Matter Decl. ¶ 3.)  The terms of the deal were memorialized in a Stock Purchase Agreement ("SPA") dated March 12, 2010.  (Matter Decl. Ex. 1.)  Pursuant to that agreement, Matter agreed to pay the Zylstras $1,530,000 in return for a 51% stake in the Dealership.  (Id. ¶ 3.)  But because Matter did not have the money needed to consummate the deal, he agreed to borrow it from the Zylstras and pay it back in installments over a period of years, with each installment addressed by a promissory note. For example, the SPA provides that "[o]n April 30, 2010, [Matter] shall pay Four Hundred Fifty Thousand Dollars to [the Zylstras].  This payment shall be made by [Matter] signing and delivering an original [] Promissory Note[], which note is attached hereto and incorporated herein by . . . reference."  (Id. ¶ 3(b).)  Similar provisions address each of five subsequent payments, culminating in a final $210,000 payment to the Zylstras via promissory note on January 31, 2015.  (Id. ¶ 3(g).)  The SPA also contains a dispute-resolution clause providing:

> The parties hereby agree to each exercise their good faith best efforts to work out and resolve any dispute that may arise out of this Agreement without resorting to litigation through court proceeding or action.  If such efforts fail, the Parties hereby agree to resolve any such disputes first through non-binding mediation, and then, if necessary, through binding arbitration in the State of Minnesota, Sherburne County, on terms and conditions that are mutually acceptable to the parties.  The Parties understand that by signing this Agreement, the Parties are forever giving up their respective rights to litigate any such dispute in a court of law and are agreeing instead to arbitrate any such disputes.  Nothing shall prevent either party from seeking emergency, injunctive relief from any court of competent jurisdiction.  While each party recognizes that the merits of any dispute will be ultimately determined by an arbitrator, each party also recognizes and agrees that it may be necessar[y to] turn to the courts for

emergency, injunctive relief until the merits of any such dispute are decided through mediation or arbitration.

(Id. ¶ 14(m).)

Matter borrowed $1,380,000 from the Zylstras under the terms of the SPA, in the process signing six promissory notes memorializing his payment obligations. The promissory notes, which are identical to one another in all respects save for the amounts borrowed and payment dates, contain a clause differing somewhat from the SPA:

> **CONSENT TO JURISDICTION**:  TO INDUCE MAKER TO ACCEPT THIS NOTE, PAYEE IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE AND THE LOAN DOCUMENTS WILL BE LITIGATED IN THE STATE COURT SITTING IN SHERBURNE COUNTY, MINNESOTA OR FEDERAL COURT SITTING IN MINNEAPOLIS, MINNESOTA; SPECIFICALLY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNEAPOLIS [*sic*], AND ALL SUPERIOR STATE OR FEDERAL COURTS.  PAYEE HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN SHERBURNE COUNTY, MINNESOTA OR MINNEAPOLIS, MINNESOTA.  IN ADDITION, PAYEE WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM OR DEFENSE THAT THE PROCEEDINGS HAVE BEEN FILED IN AN INCONVENIENT FORUM AND WAIVES ANY CLAIM OR DEFENSE WITH RESPECT TO JURISDICTION OVER THE PARTIES.

(Promissory Note B-1, attached to the SPA (Matter Decl. Ex. 1) as Ex. B, ¶ 13.)  "Payee" is defined in the notes as the Zylstras, and "Maker" is defined as Matter.  (Id. at 1.)

According to the Zylstras, Matter has failed to pay them more than $400,000 borrowed in connection with his purchase of the Dealership.  Accordingly, they commenced the instant action on July 18, 2016, alleging that Matter is in breach of

contract.  Notably, the Complaint alleges that the contracts breached by Matter are *the promissory notes*; it does not allege any claim for breach of the SPA or even mention that agreement.

Matter now moves to compel arbitration, citing the SPA's dispute-resolution clause.  He notes the clause requires arbitration of "any dispute that may arise out of" the SPA and argues the present dispute – despite the Complaint citing only the promissory notes – arises out of that agreement.  The Court agrees.

Through the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq*., Congress established a strong federal policy in favor of arbitration.  Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987).  Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  This language has been given broad application, reaching "to the limits of Congress' Commerce Clause power," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 268 (1995), and no party here disputes the arbitration clause in the SPA is in a contract covered by the FAA.

Section 3 of the Act provides that a party believing a lawsuit is subject to arbitration may move the court to "stay . . . the action until such arbitration has been had in accordance with the terms of the agreement."  When considering such a motion, doubts about arbitrability must be resolved in favor of arbitration, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp.-

Ala. v. Randolph, 531 U.S. 79, 91 (2000) (citations omitted).  Two questions must be answered:  first, is there a valid agreement to arbitrate?  If so, does the dispute fall within the agreement's scope?  E.g., Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015); Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 699-700 (8th Cir. 2008).  The first question need not detain the Court here, as no party disputes the validity of the SPA or the arbitration clause contained therein.  But neither does the second question pose any substantial difficulty.

As already noted, the SPA's dispute-resolution clause requires arbitration (after non-binding mediation) of "any dispute that may arise out of" the agreement.  To be sure, the Zylstras correctly note this language is not quite as expansive as some arbitration clauses, particularly those requiring arbitration of disputes "relating to" the parties' relationship.  Cf. Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (noting the phrase "relating to" is broader than the phrase "arising out of").  Nevertheless, the Eighth Circuit has construed the phrase "arising out of" as broad, particularly where (as here) an agreement contains no other "limiting language."  PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 837 (8th Cir. 2010).  And where a broad arbitration clause is involved, a dispute must be referred to arbitration as long as "the underlying factual allegations simply 'touch matters covered by'" it.  Id. (citation omitted); accord, e.g., 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (words "all" or "any" in arbitration clause should be construed broadly in favor of arbitration); CD Partners, LLC v. Grizzle, 424 F.3d 795, 801 (8th Cir. 2005) (favorably citing Gregory v. Electro-Mechanical Corp., 83 F.3d 382 (11th Cir. 1996), for the

proposition that a contract clause mandating arbitration of all disputes "arising hereunder" was broad enough to cover non-contract claims).

It would be difficult to conclude the claims in this action do not "touch" upon the SPA.  Indeed, although the Zylstras have artfully pleaded their claims to avoid mentioning the SPA, the notes simply cannot be divorced from that agreement, which attaches the notes and expressly "incorporates by reference" the terms contained therein. Indeed, the promissory notes exist only *because of* the SPA; their sole purpose was to memorialize the payment of sums agreed to in the SPA and document the terms of those payments.  As the undersigned noted under somewhat analogous circumstances in Valspar Corp. v. National Union Fire Insurance Co. of Pittsburgh, the promissory notes and the SPA "work together and are not so easily divorced."  104 F. Supp. 3d 977, 981 (D. Minn. 2015) (Kyle, J.).  The present dispute, therefore, touches upon the SPA.  Id.

The Zylstras assert that the dispute-resolution provision in the promissory notes, rather than the SPA, must control.  They argue that they have sued not for breach of the SPA but only for breach of the notes, which are "stand-alone, self-contained contracts." (Mem. in Opp'n at 6.)  But as already noted, the SPA and the notes work hand-in-hand. It is not as though Matter executed the promissory notes and borrowed money from the Zylstras to buy a boat or take a vacation.  Rather, he borrowed money under the promissory notes *in order to consummate the transaction contemplated by the SPA* – a document that expressly references the promissory notes.

The Zylstras also argue that if a dispute under the promissory notes is subject to the SPA's arbitration clause, the notes' own dispute-resolution clause would be rendered

meaningless.  (Id. at 10-14.)  To be sure, the dispute-resolution clause in the SPA is not easily reconciled with the one contained in the notes.  But the Court believes each can be given meaning.  Notably, the SPA expressly contemplates the possibility of litigation, in particular "emergency, injunctive relief from any court of competent jurisdiction."  An action arising out of the promissory notes for emergency injunctive relief, therefore, could be litigated in either of the fora designated in the notes, leaving all other actions arising out of the SPA subject to arbitration.[1]  Such a reading harmonizes the two provisions without rendering the language in either meaningless.

More importantly, in the Court's view the Zylstras have construed the notes' dispute-resolution clause too broadly.  As noted above, the clause provides that in order to induce the "Maker" – Matter – to enter into the notes, the "Payee" – the Zylstras – were agreeing that actions arising under the notes would be litigated in state or federal court in Minnesota.  On its face, therefore, this clause does not require all disputes arising out of the notes to proceed in litigation rather than arbitration, because it is not bilateral – it binds only the Zylstras.  In other words, the clause means that if *Maker* were to sue the Zylstras in court, they agreed to forego any objection to litigation in Sherburne County or in Minneapolis.  That is evident by the fact that this section of the notes is entitled "Consent to Jurisdiction," rather than "dispute resolution" or similar.  Contrary to the Zylstras' argument, therefore, the clause does not require all actions "in any way arising

---

[1] The Zylstras argue it would be impossible to seek injunctive relief for a breach of the notes. (Mem. in Opp'n at 12 ("[T]he Promissory Notes are simple agreements to repay money, and an action to enforce [them] would be a legal claim, such as for breach of contract.").)  But it is not difficult to conceive of a claim for injunctive relief, such as one seeking an injunction to prevent the dissipation of assets for payment of the notes.

out of or related to" the Promissory Notes "to be litigated, in court." (Mem. in Opp'n at 7 (internal quotation marks and emphasis deleted).) At most, it requires actions *commenced by Matter against the Zylstras* to be filed in particular courts. Here, of course, the reverse is true: the Zylstras have sued Matter. The notes, therefore, do not aid the Zylstras' cause.

Regardless, even if the Court harbored some doubt, compelling arbitration still would be appropriate due to the strong federal policy favoring arbitration. In light of that policy, "[a]ny doubts raised in construing contract language on arbitrability should be resolved in favor of arbitration." CD Partners, 424 F.3d at 798 (internal quotation marks and citation omitted); accord, e.g., Indus. Wire Prods., Inc. v. Costco Wholesale Corp., 576 F.3d 516, 520 (8th Cir. 2009) ("The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration.") (citation omitted). A court should find a claim subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." MedCam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005) (citations omitted). Given the nature of the claims asserted here, the broadly-worded arbitration provision in the SPA, the specific, one-sided language in the promissory notes, and the interconnectivity between them and the SPA, the Court simply cannot conclude "with positive assurance" that the present dispute is beyond the ambit of the arbitration clause in the SPA. See 3M Co., 542 F.3d at 1199 ("Given the broad scope of the arbitration clause and our 'insist[ence] upon clarity before concluding that the parties did *not* want to arbitrate a related matter,' we conclude that it cannot be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers Amtex's claims.") (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)) (emphasis in original).

As a result, the Court determines that the parties' dispute must be arbitrated. That leaves the question whether to stay this case or dismiss it. Although § 3 of the FAA discusses only a stay and not dismissal, some (including the undersigned) have recognized that dismissal of an action in favor of arbitration may be appropriate "where it is clear the entire controversy between the parties will be resolved by arbitration." Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 770 (8th Cir. 2011) (citing Jann v. Interplastic Corp., 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009) (Kyle, J.)). Generally speaking, however, the statute "requires a federal district court to stay an action pending arbitration, rather than to dismiss it." Id. at 769. In the Court's view, that is the most appropriate course of action here. Accordingly, this action will be stayed pending arbitration.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Matter's Motion to Dismiss or Stay (Doc. No. 7) is **GRANTED** and this action is **STAYED** pending arbitration. The hearing on the Motion, currently scheduled for October 7, 2016, is **CANCELED.**

Date:  September 30, 2016                              s/Richard H. Kyle
                                                                    RICHARD H. KYLE
                                                                    United States District Judge